(Nos. 00-CC-4512, 00-CC-4521 cons.—)

TEAMSTERS, CHAUFFEURS, WAREHOUSEMAN & HELPERS LOCAL UNION NO. 525, ANGELA GARDE and CHRISTOPHER KAHN, Claimants, *v.* BOARD OF GOVERNORS OF SOUTHERN ILLINOIS UNIVERSITY, Respondent.

*Opinion filed April 3, 2001.*

CAVANAGH AND O'HARA (PATRICK J. O'HARA, of counsel), for Claimants.

LUCY SINGER, for Respondent.

## JOINT OPINION

RAUCCI, J.

These are actions to compel arbitration of employment disputes under a collective bargaining agreement

(the "CBA") between a State university and a union. These cases are matters of first impression in this Court.

## Nature of the Claims

The Claimants seek orders directing the Respondent University (the "University"), as employer, to submit to arbitration of these disputes in the arbitration forum designated in the CBA. The employee-Claimants and their union contend that the CBA grants them the right to arbitrate their employment "grievances" as the final stage of the contractual grievance procedures. The University maintains that the CBA expressly excludes these suspension disputes from the grievance arbitration provision. The arbitrability issue is thus a matter of interpretation of the parties' agreement.

These claims and the parties' labor contract are governed by the Illinois Public Labor Relations Act (the "IPLRA") (5 ILCS 315/1 *et seq.*), rather than by the Illinois Educational Labor Relations Act (the "IELRA") (115 ILCS 5/1 *et seq.*) which governs most labor relations of the State colleges and universities, because the Claimant-employees are "peace officers employed by a state university" who are excluded from the IELRA (115 ILCS 5/2(b)) and included under the IPLRA. 5 ILCS 315/3(n).

## Labor Contract Cases in this Court

This is the first time this Court has been asked to decide an issue under a State labor contract, although the IPLRA and IELRA, which together first authorized collective bargaining by State (and local) public employees in Illinois, have been law for almost 17 years. (See, Public Act 83-1012 (enacting the IPLRA) and Public Act 83-1014 (enacting the IELRA), both effective July 1, 1984.) Both Acts provide for CBAs with, *inter alia*, State agencies and instrumentalities that are subject to this Court's

exclusive jurisdiction under section 8 of the Court of Claims Act. 705 ILCS 505/8.

The absence of IELRA labor cases in this Court is explained by our Supreme Court's decision in *Board of Education of Warren Twp. High School Dist. 121 v. Warren Twp. High School Federation of Teachers, Local 504* (1989), 125 Ill. 2d 155, 131 Ill. Dec. 149, 538 N.E.2d 524, which held that the Illinois Educational Labor Relations Board has "*exclusive* primary jurisdiction" (emphasis added by the Supreme Court) over contract arbitrability disputes under the IELRA, and that the administrative jurisdiction of that Board trumps the constitutional jurisdiction of the circuit court. Assuming that the Educational Labor Board's jurisdiction would also trump the statutory jurisdiction of this Court, it is unsurprising that this Court has not seen IELRA cases.

This case, however, is governed by the IPLRA rather than the IELRA. Although the Supreme Court sharply distinguished the IPLRA from the IELRA (for purposes of the jurisdictional contest between the courts and the labor board) in *Warren Twp. High School, supra*, 538 N.E.2d at 527, 131 Ill. Dec. at 152, relying on its prior analysis in *Board of Education v. Compton* (1988), 123 Ill. 2d 216, 122 Ill. Dec. 9, 126 N.E.2d 149, neither that decision nor any later decision has addressed the jurisdictional issues under the IPLRA—either as between the courts and the State and Local Labor Relations Board, or as between the constitutional courts and this statutory Court. The absence of IPLRA cases in this Court for the past 17 years is not explained by published judicial precedent.

## Claimants' Jurisdictional Arguments

We questioned our jurisdiction over these labor contract disputes and whether we must defer to the appropriate

labor relations board. None of the parties challenges our jurisdiction.

The Claimants predicate jurisdiction on section 8(c) of the Court of Claims Act (705 ILCS 505/8(c)), our "contracts" jurisdiction, which authorizes this Court to "hear and determine" claims "founded upon any contract entered into with the State of Illinois," which encompasses contracts of the State colleges and universities. Claimants advance the straightforward theory that the arbitrability issue is a matter of interpretation of a State contract which is well within the terms of section 8(c) and a well-settled function of this Court.

Claimants also contend that because these parties' labor "relationship * * * is subject to the [IPLRA] * * *," which "* * * provides [in section 5 of the ILPRA, 5 ILCS 315/8] that the grievance and arbitration provisions of collective bargaining agreements are also subject to the Uniform Arbitration Act" (the "UAA") and because the UAA provides for arbitrability to be determined by the courts (unless the issue is referable to the arbitrator under the standards laid down in *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr* (1988), 124 Ill. 2d 435, 530 N.E.2d 439, 125 Ill. Dec. 281, this Court is the proper and exclusive forum to adjudicate arbitrability when, as here, the labor agreement involved is a State contract. (See, Claimant's "Memorandum * * * Regarding Jurisdiction" in No. 99-CC-4521, at 3, note 1.)[1]

Claimants thus assert that this Court is the exclusive forum for determining arbitrability—and presumably all other contract issues—under all State labor agreements governed by the IPLRA.

[1] In paragraph 2 of their complaints, claimants asserted jurisdiction of this court "pursuant to * * * [the] authority" of *Local 3236 of the Ill. Fed. of State Office Educators, IFT-AFT, AFL-CIO* (1st Dist. 1984), 121 Ill. App. 3d 160, 459 N.E.2d 300. That decision, however, antedated the IPLRA, which governs these cases.

## Jurisdictional Analysis

We agree that our jurisdiction under section 8 of the Court of Claims Act covers this contract and this arbitrability issue, and that therefore this Court has *prima facie* "exclusive jurisdiction" to adjudicate this State contract dispute. However, this threshold determination does not resolve the issue.

This Court's comprehensive review of the statute governing this labor contract—which neither the Claimants' counsel nor the Respondents' counsel apparently did—discloses two related provisions that fundamentally alter the jurisdictional analysis. Sections 16 and 25 of the IPLRA (5 ILCS 315/16 and 315/25) read as follows:

"§16. Exhaustion of nonjudicial remedies. After the exhaustion of any arbitration mandated by this Act or any procedures mandated by a collective bargaining agreement, suits for violation of agreements * * * between a public employer and a labor organization representing public employees may be brought by the parties to such agreement in the circuit court in the county in which the public employer transacts business or has its principal office.

* * *

§25. For purposes of this Act, the State of Illinois waives sovereign immunity."

The General Assembly has also specifically exempted suits under the IPLRA from the State's statutory sovereign immunity. See, section 1 of the State Immunity Act, 745 ILCS 5/1.

These enactments make it clear that the circuit court has jurisdiction to adjudicate these arbitrability issues—and all contract issues arising out of IPLRA labor agreements—even when the public employer is the State and even when the State is sued as a defendant. The legislative intent that the constitutional courts can decide these IPLRA claims against the State is unmistakable.[2]

---

[2] These obvious and startling provisions of the governing statute were not brought to this Court's attention in the parties' briefs nor at the oral argument. There is a lesson here for lawyers—and for judges: The analysis of a case *always* requires a fresh and *complete* review of all applicable statutes.

The issue of this Court's jurisdiction over IPLRA contract claims thus turns into a novel question in Illinois: What is the effect of the statutory allowance of circuit court jurisdiction over these claims upon the "exclusive jurisdiction" of this Court over the same claims?

Analytically, there are three possible outcomes: (1) the Court of Claims has concurrent jurisdiction with the circuit court over contract disputes governed by the IPLRA, as the statutes effectively grant jurisdiction to both courts; or (2) the specific "exclusive jurisdiction" of the Court of Claims under section 8 of the Court of Claims Act (705 ILCS 505/8) over State contracts trumps the general jurisdiction of the circuit court when sovereign immunity no longer bars that general jurisdiction, or (3) the later statutory waiver of sovereign immunity, allowing circuit court adjudication of State IPLRA contracts, trumps the statutory "exclusive jurisdiction" of the Court of Claims over those State contracts, despite the absence of an express statutory exception in section 8.

In these cases, we need decide only whether outcome (1) or (3) is the statutory result, *i.e.*, whether this Court retains concurrent non-exclusive jurisdiction or whether the legislature has divested our section 8 jurisdiction over State IPLRA labor contracts.

At the outset, we are forced to conclude that there is a statutory conflict—between the "exclusive jurisdiction" provision in the Court of Claims Act and the IPLRA authorization of circuit court jurisdiction—as applied to claims against the State on State labor contracts governed by the IPLRA. There is simply no way to fully reconcile "exclusive" jurisdiction in one court with simultaneous jurisdiction in another court over the same subject matter. Once the circuit court has jurisdiction, as this Court must and does recognize, this Court's jurisdiction cannot be "exclusive."

Thus, whatever else may be uncertain, it is clear that the legislature has superseded (or impliedly repealed) the "exclusive" aspect of our section 8 jurisdiction over State IPLRA contracts. The question we must now decide, of course, is whether these 1984 statutory enactments did anything else to our jurisdiction. This is not an easy issue of statutory construction.

There is no obvious historical antecedent that might provide guidance to the resolution of this statutory conflict. We are unaware of any previous example of the General Assembly having relaxed Illinois' sovereign immunity to permit circuit court adjudication of a claim against the State that was already committed to this Court's "exclusive" jurisdiction. We find no precedent for concurrent jurisdiction of this Court with another court or agency; this statutory Court has always been given specific and exclusive jurisdiction over narrowly-defined subject matter.

The legislative intent is not clarified by the statutory language in either of the conflicting acts. There is no mention of this Court or of the Court of Claims Act in the IPLRA. The Court of Claims Act was not amended to affect or clarify this Court's section 8(c) "exclusive jurisdiction" over suits against the State on State contracts, as one would expect when an inconsistent statute is enacted that affects the prior statute. Similarly, we have found no guiding Illinois judicial precedent involving a similar jurisdictional dispute between this Court and the circuit court. The closest guidance we have found is the *Warren Twp. High School* decision, *supra*, which involved a court-agency jurisdictional issue (under a different statute, and involving the doctrine of primary jurisdiction) rather than a court-court jurisdictional issue as here.

Looking first to the statutes, we observe that the conflict between the IPLRA and the Court of Claims Act,

on its face, does not extend beyond the issue of exclusivity as to this one class of contract disputes. The statutory construction principle of reconciling inconsistent statutes to the maximum extent feasible, in order to give effect to as much of the legislative language and intent as possible, militates for result number 1: concurrent jurisdiction. Indeed, the legislative failure to amend our jurisdictional statute (section 8 of the Court of Claims Act) to add an exception for IPLRA contract disputes—just as an exception was added to the Immunity Act—is an indication of legislative intent *not* to divest our jurisdiction.

However, that reasoning is contradicted by the legislature's failure to resolve the obvious conflict between the two statutes—on the "exclusivity" issue—by legislation amending our section 8 jurisdictional language. We are reluctant to assume that this was a legislative oversight. Nevertheless, in this case, the negative inference drawn from this legislative omission is not compelling. If we are guided by the statutory language, we must give weight to the fact that our Act after 17 years still grants the section 8(c) jurisdiction that—exclusive or not—covers this contract dispute.

On the other hand, the IPLRA language, particularly the waiver of sovereign immunity in section 25 of the IPLRA and the companion amendment to the State Immunity Act, are extraordinary legislative enactments that are untraditional in Illinois. These must be taken to reflect a strong and unequivocal legislative intent to have the circuit court (and thus, ultimately, the Illinois reviewing courts) decide this class of labor contract disputes— or, at a minimum, to allow the parties to elect to take their dispute to the constitutional courts *in lieu* of this Court. That said, the correct result remains unclear.

We find guidance in the Supreme Court's analysis in *Compton, supra,* and *Warren Twp. High School, supra,*

although we recognize the several points of distinction between the issues there and the issue here. The reasoning of those decisions seems applicable here.

In both opinions, our Supreme Court relied heavily on the absence of UAA provisions in the IELRA and the incorporation-by-reference of the UAA in the IPLRA as a fundamental distinction between the two statutes and as a legislative prescription of the methods of enforcement of these statutory schemes. That statutory difference leads the Court to conclude that the plenary *constitutional* jurisdiction of the circuit court was completely pre-empted by the IELRA (in favor of the Educational Labor Board). The Court focused on the provisions of the IELRA, which

"explicitly provided[s] for enforcement of arbitration awards in accordance with the Uniform Arbitration Act * * * all proceedings to compel arbitration, to stay arbitration, to seek vacation of an award, or to enforce an award are through the circuit court." *Board of Education v. Compton, supra*, at 123 Ill. 2d 216, at 222, excerpted in *Warren Twp. High School, supra*, 583 N.E.2d at 527, 131 Ill. Dec. at 152.

The Supreme Court found that the *absence* of these provisions in the IELRA "strongly suggests that the legislature did not intend review of arbitration awards by the circuit court, even as to 'arbitrability'" *Compton, ibid.*, quoted in *Warren Twp. High School, ibid.* Here, the *presence* of these provisions in the IPLRA, together with the explicit allowance of circuit court jurisdiction, strongly suggests to this court that the legislature intended that Court and not this Court to adjudicate enforcement issues under the IPLRA. This conclusion is also compellingly supported by the jurisdictional inability of this Court to give full relief "for enforcement of arbitration awards" when that requires injunctive relief, as it often does, which this Court lacks the authority to grant. *Gabriella v. Board of Trustees of the University of Illinois* (1996), 50 Ill. Ct. Cl. 350.

254

Finally, the Supreme Court's reasons for rejecting concurrent jurisdiction between the circuit court and the administrative labor board (construing the IELRA) in *Compton* and in *Warren Twp. High School* applies fully to the present issue under the IPLRA:

"Finally, we agree * * * that vesting dual jurisdiction over arbitration awards in the Board and the circuit courts [sic] would invite 'conflicting judgments and forum shopping' which would imperil the uniformity which the Act obviously seeks to achieve." 123 Ill. 2d at 222, 122 Ill. Dec. 9, 526 N.E.2d 149. *Warren Twp. High School, ibid.,* quoting *Compton.*

The uniformity point applies with greater force here than in *Warren Twp. High School,* because there is no appeal on the merits from this court's decisions, whereas in the *Warren Twp. High School* case, section 16(a), the IELRA (115 ILCS 5/16(a) provides for an administrative review appeal to the Appellate Court, and thus on to the Supreme Court, so there was an appellate mechanism for achieving uniformity there. If this Court had concurrent jurisdiction, there would be no established means for a litigant to secure the "uniformity that the Act * * * seeks."

Thus the Supreme Court's reasoning as well as its ultimate conclusion in *Warren Twp. High School, supra,* and *Compton, supra,* construing the IELRA to provide a single jurisdictional route to enforcement, leads this Court to conclude that the General Assembly similarly intended a single jurisdictional path for enforcement of the IPLRA and labor agreements thereunder, and that path plainly leads to the circuit court and not to this Court.

Finally, this result accords with the underlying historical purpose of this Court. Although the legislature over the years has delegated jurisdiction to this Court over a number of disparate and unrelated subjects (see, e.g., sections 8(f) and 8(h) of the Court of Claims Act, 705 ILCS 505/8(f)-(h)), the primary purpose of this Court was and remains to "hear and determine" claims against the

State that are barred in the constitutional courts by sovereign immunity. (See, sections 8(a) and 8(d) of the Court of Claims Act.) Thus, when the bar of sovereign immunity is dropped by the legislature for some specified class of cases, as it has been in section 25 of the IPLRA "for purposes of this Act," the suggestion, if not the presumption, is that the General Assembly no longer found a reason for committing such matters to the "exclusive jurisdiction" of this statutory Court.

If our reading of the legislative intent of the IPLRA turns out to be incorrect, despite the General Assembly's long acquiescence in the Supreme Court's 1988 (*Compton, supra*) and 1989 (*Warren Twp. High School, supra*) rejection of concurrent jurisdiction under the IELRA, the legislature can readily clarify these statutes, but in the interim these Claimants and the University have a clearly available Illinois forum in the circuit court for the resolution of their arbitrability dispute. Our denial of jurisdiction over this IPLRA labor contract dispute will not deprive any party of a remedy.

## Conclusion

For the foregoing reasons, it is hereby ordered:

1. These claims are dismissed for lack of subject matter jurisdiction, without prejudice to any action in another court;

2. This order shall be entered in both No. 00-CC-4512 and No. 00-CC-4521.